Roger **FORSYTHE** and Carol Forsythe

v.

Saul **COHEN** and Morris Lansburgh, d/b/a Deauville Hotel, and Shawn Masters.

Civ. A. No. 4107.

United States District Court
D. Rhode Island.

Nov. 10, 1969.

Leonard A. Kiernan, Jr., Providence, R. I., for plaintiffs.

Joseph A. Kelly, Providence, R. I., for defendants.

## OPINION

PETTINE, District Judge.

The plaintiffs, residents of the State of Rhode Island, bring this action sounding in tort and contract for personal injuries, loss of services and medical expenses against the defendants as domiciliary residents of the State of Florida. The defendants have moved to dismiss

the complaint contending the service of the summons and complaint was improper and defective and that they are not licensed to do business, are not doing business, are not residents of nor have any contacts with or in the State of Rhode Island so as to confer jurisdiction under the provisions of § 9-5-33, General Laws of Rhode Island 1956 as amended.

## FACTS

This recitation of events is based on the testimony established at a hearing on defendants' motion to dismiss and all reasonable inferences drawn therefrom.

In 1967, the plaintiffs went to the Versailles Hotel in Miami Beach, Florida as a result of reading a brochure obtained from a travel agency in Rhode Island advertising a tour, the itinerary of which included, among other things, staying at the Versailles with an evening meal and entertainment at the Deauville Hotel also in the same location in Florida.

In 1968, the plaintiffs again saw an advertisement in the Providence Sunday Journal for a tour to Miami Beach including the Deauville Hotel and as a result thereof contacted a local travel agency to make the necessary arrangements to go; while at the Deauville viewing a performance of the defendant, Shawn Masters, the plaintiff, Carol Forsythe, allegedly was subjected to hypnosis negligently allowed by the defendants without regard to the consequences of such act and as a result was injured physically and mentally.

The plaintiffs established through the testimony of Curtis Givan, an experienced travel agent, that his agency has in fact made direct reservations for and has received from the Deauville commissions; that he has a hotel guide listing all the hotels which authorized travel agents are allowed to book and that the Deauville is listed therein as one that will pay full commission to the agency for all reservations made through it; he also has a world wide hotel guide called "Consolidated Air Tour Manual" listing the defendant, Deauville Hotel. Apparently, this is sent to all the agencies and though Mr. Givan received his copy gratis directly from the publisher in California, he does not know if there are any agreements between the publisher and hotel proprietor for such listings. Mr. Givan further stated brochures advertising the Deauville were received by him, but he was not able to say if they came directly from the hotel or through tour operators though he knows they do come from both these sources.

## DISCUSSION

In Westphal v. Stone Manufacturing Co., 305 F.Supp. 1187 (D.R.I. November 10, 1969) this court discussed the question of "doing business" within the state in relation to presence for jurisdictional and venue purposes and it need not be reiterated here. Applying the same rationale to the case at bar, it need, therefore, only determine whether or not the facts meet the "minimum contacts" test for the purpose of in personam jurisdiction.

This cause of action arose out of a contract made and executed in this state by the plaintiffs with a defendant who actively solicited the plaintiffs' patronage. The defendants' conduct reveals a pattern of activities in the Rhode Island District which impress a commensurate obligation to respond to the plaintiffs' suit. The permissible scope of this court's jurisdiction over the foreign defendants stems from their economic need to attract out of state tourists to their resort hotel. They have geared themselves to a wide spectrum of activities, national in scope, designed to reach every reservoir of business wherever the same may be found. To this end, there has been the utilization of a "Consolidated Air Tour Manual" giving rise, literally, to an international listing of their place of business which this court judicially recognizes is located in one of the East's, if not the Nation's, attractive resort areas; the "Hotel Guide", another nationally publicized listing of hotels, not only has the same accomplishments as

the "Air Tour Manual" but in addition thereto goes to travel agents throughout the country with specific authorization to book clientele on a full commission basis; we find also that brochures were sent directly by the defendant owners to travel agents in foreign states and though the testimony in this case could not establish the particular brochure introduced in evidence advertising the Deauville as coming directly from the defendants, it does show such advertisements are received by local travel agents from dual sources, namely, the owners directly and tour operators. It may be said these are the direct contacts with the forum state. However, to further accentuate solicitation of extra territorial business, intermediaries are utilized such as "Cavalcade of Stars" described as a "go between" organization. The testimony was not entirely clear as to their exact operations, but it is unmistakably clear they promote entertainment for the hotels on an interstate basis by employing contact men who visit travel agencies in various states and as evidenced by their brochures concerning the defendant hotel on display in Mr. Givan's local travel agency reading, "Deauville, 'Hotel of the Stars' presents Cavalcade of Stars, 1969 and your winter calendar of pleasure."

It is further interesting to note that in order to insure an even distribution of business, the resort hotel owners have formed an alliance requiring that tours to their respective hotel require a degree of activity at other hotels which, if not accepted, leaves the tourist no alternative but to go out on his own at his own expense above the contracted tour price.

The end result of such conduct is a nationalization of activities clearly within the intent and meaning of the case law development and elaboration of minimum contacts to make those who seek the protection and privilege of doing business within a state be amenable to the jurisdiction of its courts.

An intentional scheme of interstate operation by hotel proprietors competitively seeking economic benefits satisfies the due process requirements with the establishment of conduct within the forum state necessary to accomplish its purpose to any extent. The economic impact on the state from a particular solicitor is quite secondary to his economic advantage which, in relation to the total business realized, neither expects nor seeks more than a small percentage of all tourist trade. However, he is part and parcel of a wide operational scheme affecting all tourists from the state which in its entirety is of substantial nature and to render such operators immune from suit in the forum state would offend traditional notions of fair play and substantial justice.

■ In this case, the nature and quality of the evidence perceptibly tips the scales in favor of the plaintiffs. A summation may be itemized as follows:

a) The defendants advertise in Rhode Island as shown by the brochures and travel folders distributed to travel agencies for their use and for their customers;

b) the authorization to travel agencies to make reservations as was done by the Pearson Travel Agency of this state; Curtis Givan, its manager, testified that he had in fact made reservations for Rhode Island customers directly with the Deauville and accepted deposits to confirm the same which in turn he remitted, whereupon, he received a check as commission directly from the defendants' hotel;

c) advertisements of tours including the Deauville Hotel in the Providence Sunday Journal with telephone numbers to call, toll free, as testified to by Mr. Forsythe who stated the 1968 trip was the direct result of his reading such an advertisement in the Journal concerning a tour which did include the Deauville Hotel;

d) the making of the contract in Rhode Island;

e) the entire scheme of interstate listings in nationally and internationally published guides;

f) the employment of intermediaries to make personal contact in the various states as was done in Rhode Island;

g) the pronounced use of brochures by the defendants directly or by the intermediaries advertising the defendants' hotel singly or as a tour inclusion.

Here, as in the *Westphal* case, supra, it can be said "(T)his conduct cannot be termed a passing interest, occasional or sporadic."

The defendants cannot now require the plaintiffs to journey to Florida and prosecute that action in that distant forum without evidence establishing that the convenience of the parties and witnesses in the interest of justice requires this court to transfer the action to that court.

## CONVENIENT FORUM

No argument was made by either party relative to 28 U.S.C. § 1404(a). However, since the plaintiffs have chosen this forum as the most convenient for their purposes and no argument or evidence in opposition has been offered by the defendants, this court accepts the plaintiffs' position.

One hardly needs argument or evidence to conclude the travel of the plaintiffs alone violates the rule of fair play and substantial justice. Consideration of the cost of medical experts, lay witnesses, and exhibits clearly points out why the Rhode Island legislature passed § 9–5–33 General Laws 1956 as amended. The legislature was fully cognizant of the problems involved with the "doing business" statutes. It chose to exercise jurisdiction over foreign corporations and individuals up to the constitutional limitation.[1]

1. See Donald Westphal and Cheryl Ann Westphal, P.P.A., v. Stone Manufacturing Co., C.A.No. 3567 (D.R.I. November 10, 1969); Riverhouse Publishing Co. v. Porter and Hall Syndicate, Inc., D.C., 287 F.Supp. 1; Del Sesto v. Trans World

The defendants must be required to defend this action on its merits in this forum.

The defendants' motion to dismiss is hereby denied.

Airlines, Inc., D.C., 201 F.Supp. 879; Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I. April 25, 1969) and cases cited therein.