**Ralph H. AYLSTOCK, Plaintiff,**

v.

**MAYO FOUNDATION, a/k/a Mayo Clinic, a Minnesota corporation, and Rochester Methodist Hospital, a Minnesota corporation, Defendants.**

**Civ. No. 2037.**

United States District Court,
D. Montana,
Helena Division.

May 5, 1972.

Loble, Picotte, Loble, Pauly & Sternhagen, Helena, Mont., for plaintiff.

Gough, Booth, Shanahan & Johnson, Helena, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Stephanie Aylstock, a 14-year-old girl, drowned in a tub shower while she was a patient in the defendant Rochester Methodist Hospital (Hospital) under the care of Mayo Foundation (Mayo). This action charging negligence on the part of Hospital and Mayo was filed in the state courts in Montana and removed to this court. Defendants have moved to dismiss for lack of jurisdiction over the person. The court stayed discovery except as it related to jurisdiction.[1] The parties took depositions and presented evidence in open court on the problem of jurisdiction.

From the evidence it appears that Mayo Foundation is a nonprofit corporation organized under the laws of Minnesota to engage in the business of medical treatment and research. It is basically the successor to the Mayo Clinic established by Drs. Charles and William Mayo. The doctors comprising the working staff of the foundation are employees. The doctors and all of the physical facilities of the clinic are located at Rochester, Minnesota, and all of Mayo business is done there.

The defendant Hospital is also a nonprofit Minnesota corporation doing all of its business in Rochester. Actually, although the Hospital is a separate legal entity, its sole function is to serve the Mayo patients because it has a closed staff comprised exclusively of Mayo doctors and accepts only Mayo patients.

Mayo treats and Hospital admits patients from all over the world, including Montana, but neither Mayo nor Hospital have any physical facilities or personnel in Montana. Except under the kind of unusual circumstances found here, the only normal connection of Mayo or Hospital with Montana would be in the answering of inquiries and the making of hospital and doctor appointments for those residents of Montana who wish to be treated by Mayo in Rochester.

Dr. M. R. Wilson was, in December 1969, the chief of the Adolescent Psychiatric Unit at Mayo and a member of the staff of Hospital. In that month Dr. Wilson was advised that his mother was suffering from terminal cancer. He secured an emergency leave and came to Helena, Montana, to be with his mother. While in Helena he established an office in St. Peter's Cathedral. From the office he communicated with Mayo about his patients in Rochester and worked on a paper which he was authoring.

Dr. Wilson's business contacts with Montana during his stay in Helena were these: A Dr. Burgess had at that time a patient, Stephanie Aylstock, a disturbed child. Dr. Burgess was the physician attending Dr. Wilson's mother. Knowing that Dr. Wilson was a Mayo man and a psychiatrist, Dr. Burgess asked Dr. Wilson if he would see the Aylstocks about their problem. Dr. Wilson consented and Dr. Burgess made the appointment. During the appointment Dr. Wilson interviewed Mr. and Mrs. Ayl-

1. *See* Yules v. General Motors Corp., 297 F.Supp. 674, (D.Mont.1969).

stock and Stephanie. It is apparent from the evidence and Dr. Wilson's report to Dr. Burgess that these interviews were sufficient in depth to substitute for the interviews which would normally have been conducted of all three of the Aylstocks at Mayo in Rochester as a condition of Stephanie's being admitted as a patient in the Psychiatric Unit. During the course of the interview Dr. Wilson told the Aylstocks of the facilities at Mayo and recommended that Stephanie be hospitalized there or in some similar place. Later Dr. Larson, a psychiatrist who had treated Stephanie, called upon Dr. Wilson in his office and they discussed Stephanie and her problems. The Aylstocks were advised that if Stephanie should become a candidate for admission to Mayo the parents should write to Dr. Wilson. Dr. Wilson by letter advised Dr. Burgess that a normal fee for the interview would be $75.00 to $100.00 and suggested this should be collected by Dr. Burgess and used for Dr. Wilson's purposes.

■■ Since no tort action accrued in Montana, jurisdiction under Montana's Long Arm Rule must be found under Rule 4, subd. B(1) (a) Mont.R.Civ.P. which provides jurisdiction where the claim for relief arises out of the transaction by a defendant of any business in the state.

It is not enough, however, that the conduct giving rise to the litigation fell within the exterior boundaries of the jurisdictional statute for it must also meet the "minimal contacts" rule of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This court[2], following the path taken by the Court of Appeals for the Ninth Circuit[3] has established the tests to be applied. Two of the tests may be satisfied here—the act within the forum and a relationship between that act and the damage. The

case, however, does not satisfy the third test, *due process*—a consonance with the due process tenets of "fair play" and "substantial justice."

It is sought to make Mayo and Hospital (which is even more remote) come to Montana to defend a tort action which occurred in Minnesota. Mayo and Hospital do their business exclusively in Rochester, neither had ever solicited business in Montana, and they did not send Dr. Wilson into Montana. While Dr. Wilson did go far enough to establish that Stephanie was a proper candidate for the Mayo Psychiatric Unit, it was contemplated by all that Stephanie would be accepted as a patient and admitted to the Hospital in Minnesota and that all of the services would be rendered there. This is not the case in which a foreign corporation deliberately engages in a policy which is intended to put so much of its product into the state as the market will absorb.[4]

In this case Dr. Wilson was in Montana for purely personal reasons. He sought no business—he was sought out. The interviews were had and the advice given for the convenience of plaintiff, not Mayo or Hospital. Under these circumstances and on the basis of one isolated act, to subject Mayo to the jurisdiction of Montana would not be reasonable.

It would be even more unreasonable to submit Hospital to the jurisdiction of Montana. It is inconceivable that a doctor member of a hospital staff who is not shown to have any connection with the business management of the hospital corporation and no actual authority would have an implied authority to do acts in a foreign state which would subject the hospital corporation to the jurisdiction of that foreign state.

It is ordered that this action be dismissed for want of jurisdiction.

2. Yules v. General Motors Corp., *supra*; Bullard v. Rhodes Pharmacal Co., 263 F.Supp. 79 (D.Mont.1967).

3. L. D. Reeder Contractors of Ariz. v. Higgins Industries, 265 F.2d 768 (9th Cir. 1959).

4. Bullard v. Rhodes Pharmacal Co., *supra*.