Louis F. SOARES, Jr. and Katherine F. Soares, Individually and on behalf of their unborn child

v.

Barbara ROBERTS, M. D. and Preterm, Inc.

Civ. A. No. 750363.

United States District Court, D. Rhode Island.

July 13, 1976.

Alan H. Pearlman, Providence, R. I., for plaintiffs.

John A. Baglini, Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

This is a medical malpractice and breach of contract diversity action brought by Rhode Island plaintiffs against a Massachusetts medical facility and one of its staff physicians. The defendant non-profit facility, Preterm, Inc., and defendant Dr. Roberts seek dismissal of the complaint on the grounds that this Court does not have *in personam* jurisdiction over them.

The relevant statute is R.I.G.L. § 9–5–33,[1] Rhode Island's long arm statute. It provides jurisdiction in the Rhode Island

---

1. R.I.G.L. § 9–5–33 provides:

   "*9–5–33. Jurisdiction over foreign corporations and over nonresident individuals, partnerships, or associations.*—Every foreign corporation, every individual not a resident of this state or his executor or administrator, and every partnership or association, composed of any person or persons, not such residents, that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations and such nonresident individuals or their executors or administrators, and such partnerships or associations amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.

   Service of process may be made on any such foreign corporation, nonresident individual or his executor or administrator, and

courts over any foreign corporation or non-resident individual who has sufficient minimum contacts with this state. Jurisdiction is to be exercised up to constitutional limits. The applicable standard instructs that contacts are sufficient if maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (hereinafter *Shoe*); *Del Sesto v. T. W. A.,* 201 F.Supp. 879 (D.R.I.1962). There is no precise formula for applying this standard: each case must be determined on its own facts. *Scott Brass, Inc. v. Wire and Metal Specialties Corp.,* 344 F.Supp. 711 (D.R.I. 1972).

### Dr. Roberts

■ The defendant doctor's argument that she has not had sufficient contact with the state of Rhode Island is quite convincing. Her affidavit establishes that she has never lived nor practiced medicine in the state of Rhode Island, and that the professional services she performed for plaintiff Katherine Soares were undertaken in Massachusetts as an employee of Preterm.

In *Gelineau v. New York University Hospital,* 375 F.Supp. 661 (D.N.J.1974), the New Jersey plaintiff had been treated in New York by New York defendants and attempted to obtain jurisdiction over them in New Jersey. The District Court noted that situations involving medical services are quite different from those involving manufactured goods and held that sufficient minimum contacts were not present:

> "When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on

any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice he received.

\*    \*    \*    \*    \*    \*

> . . . [T]he residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home ought to expect he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly." *Id.* at 667.

The same conclusions were reached in several other cases very similar to *Gelineau: Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972); *McAndrew v. Burnett,* 374 F.Supp. 460 (M.D.Pa.1974); *Aylstock v. Mayo Foundation,* 341 F.Supp. 560 (D.Mont.1972). In *Wright* the Ninth Circuit wrote:

> "[T]he idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treat-

such partnership or association within or without the state in the manner provided by any applicable procedural rule or in the manner prescribed by order of the court in which such action is brought.

Nothing herein shall limit or affect the right to serve process upon such nonresident

individual or his executor or administrator, or such partnership or association, or a foreign corporation within this state or without this state in any manner now or hereafter permitted by law."

ment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state." *Id.* at 289–290.

■ Relying upon the cited decisions in *Kouffman v. New England Medical Center Hospital,* C.A. No. 750053, unreported opin. (D.R.I. 4/6/76), this Court recently found that Rhode Island lacked *in personam* jurisdiction over several Massachusetts physicians who, like Dr. Roberts herein, treated the Rhode Island plaintiff in Massachusetts without taking any action to solicit her case. The fact that agents of Preterm other than Dr. Roberts solicited Rhode Island referrals does not distinguish Dr. Roberts' position from that of defendant physicians in *Kouffman.* In reaching this conclusion, the Court must reject plaintiffs' assertion that personal jurisdiction over Dr. Roberts may rest simply upon her status as a nonresident agent of a principal (Preterm) which itself has sufficient contacts with the forum state. This argument turns the principal-agent concept on its head. Although the activities of corporation agents in the forum state may establish minimum contacts of the nonresident corporation, *see, e. g., Shoe, supra,* these corporate activities cannot be used to establish minimum contacts of a nonresident corporate agent who did not participate in the forum activities in any respect. A contrary conclusion would clearly be illogical and unfair and, if applied in the extreme, would for example make a Detroit-based clerical or assembly-line employee of General Motors amenable to suit in other states to the same extent as his employer. Such a basis for jurisdiction would not comport with the Supreme Court's observation in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), that:

"[I]t is essential, in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits of its laws."

*Cf. Riverhouse Publishing Co. v. Porter,* 287 F.Supp. 1 (D.R.I.1968).

### Preterm

In *Kouffman, supra,* the Court also found insufficient the Rhode Island contacts of Massachusetts-based New England Medical Center. In that case the medical facility had not solicited any patients; its only direct contact with the forum state consisted of the purchase of laboratory supplies from two Rhode Island suppliers to take out of the state. The Court characterized this relationship with the forum as one of "passive purchaser", *see Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079 (1st Cir. 1973), and emphasized that this relationship had no direct connection either to plaintiff or the alleged tortious conduct.

In contrast, Preterm has engaged in a continuous relationship with the forum state at least since late 1973 for the purpose of soliciting and facilitating referrals of Rhode Island residents to its Massachusetts facility. This relationship has a direct connection with the case at bar, since plaintiff Katherine Soares falls within the class of persons Preterm's appeal was designed to reach.[2]

Preterm, according to the affidavit of its Executive Director, has placed advertisements describing its services in local college newspapers and, on December 9, 1973, in the Providence Sunday *Journal.* Preterm has received patient referrals from a number of Rhode Island medical, university, and community organizations, and employs a community relations administrator on its staff to·keep such groups informed of its services. This individual has travelled to Rhode Island one time each in 1974 and in 1975 to perform such duties.

Preterm has also caused advertisements for its services to be placed in a Boston-based newspaper and broadcast by a Bos-

**2.** In her affidavit, plaintiff Katherine Soares states that she "learned about the services of Preterm, Inc. through a friend who had been referred to Preterm, Inc. for an abortion by 'Planned Parenthood of Rhode Island'."

ton-based television station which are both widely received in Rhode Island. The foregoing recitation of direct attempts to solicit Rhode Island patients compels the Court to conclude that the Rhode Island impact of these Boston-originated advertisements was neither unforeseen nor fortuitous. *See McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166 (D.Conn.1973); *Livingston v. Weis, Voisin, Cannon, Inc.,* 294 F.Supp. 676 (D.N.J.1968). *But compare Scheidt v. Young,* 389 F.2d 58 (3d Cir. 1968). Partly as a result of all these efforts, a total of 418 Rhode Island residents obtained abortions at Preterm in the nine-month period between March 1 and November 30, 1975, which represents 5% of all abortion patients treated in that period.

█ These undisputed facts lead the Court to conclude that Preterm, by knowingly soliciting Rhode Island residents on a continuing basis to utilize its medical facilities, has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla, supra,* and has submitted itself to the jurisdiction of the Rhode Island courts at least as to those individuals whose business the solicitation was designed to obtain. *Cf. Riverhouse Publishing Co. v. Porter, supra* at 8 and n. 8.

█ In reaching this conclusion, the Court is well aware that it does not comport with what has been termed the "well established [rule] that the occasional business visit of an officer of the corporation or the *mere solicitation* of business, without more, is not enough" to confer personal jurisdiction over a foreign corporation. *Aquascutum of London, Inc. v. S/S American Champion,* 300 F.Supp. 26, 29 (S.D.N.Y. 1969) (emphasis added). Indeed that "rule"

has been recited without further analysis by this Court as well in *Riverhouse Publishing Co. v. Porter, supra* at 9. Nonetheless, further reflection causes me to conclude that a court which mechanically applies the so-called "solicitation plus" rule is not fulfilling its responsibility under *Shoe* and R.I. G.L. § 9–5–33 to examine the nature and quality of contacts with the forum in relation to the particular circumstances of the case. In addition, it has previously been noted that the "solicitation plus" rule antedates *Shoe* and was implicitly rejected by it.[3] Note, Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 922–923, 930 (1960).

The Court does not suggest that the concepts underlying the "solicitation plus" rule should be disregarded; to the contrary, it would be surprising if the case-by-case approach mandated by *Shoe* produced results far different from those produced by strict application of the "solicitation plus" rule. Thus, reference to past decisions adhering to the "rule" may be of value to our discussion.

In resolving minimum contacts questions where solicitation of forum business was a key feature, a number of decisions have avoided a direct challenge to the "mere solicitation" bar by finding "solicitation plus" in the fact that the shipment of goods into the forum state was the likely or actual consequence of the solicitation. *See, e. g., Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 374 F.Supp. 184 (D.Del.1974); *Manchester Modes, Inc. v. Lilli Ann Corp.,* 306 F.Supp. 622 (S.D.N.Y.1969); *Samson Cordage Works v. Wellington Puritan Mills, Inc.,* 303 F.Supp. 155 (D.R.I.1969). *Cf. McFaddin v. National Executive Search, Inc., supra.* Such a "plus" could not exist here, since an

---

**3.** In making a similar inquiry to determine whether venue was properly laid under the Clayton Act, 15 U.S.C. § 22, the Supreme Court noted, with reference to *Shoe,* that:

"Refinements such as previously were made under the 'mere solicitation' and 'solicitation plus' criteria . . . [are] no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' [has become] the test of venue." *United*

*States v. Scophony Corp.,* 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948).
Similarly, in *Lone Star Package Car Co. v. Baltimore & O. R. Co.,* 212 F.2d 147, 155 (5th Cir. 1954), the Fifth Circuit concluded that the rigid "mere solicitation" rule established in *Green v. Chicago, B. & Q. R. Co.,* 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916 (1907), had been replaced by the basic principles of fairness announced in *Shoe* and its progeny.

integral feature of the solicitation was utilization of Preterm's *services* at an *out of state* facility.

In this regard, this Court's decision in *Forsythe v. Cohen*, 305 F.Supp. 1194 (D.R.I. 1969), appears to have greater relevance.[4] In that case Rhode Island residents brought suit against the owners of a Florida hotel for injuries which were allegedly sustained while plaintiffs were guests at the hotel. The Court found the hotel owners amenable to suit in Rhode Island based primarily upon the fact that the defendants had actively solicited plaintiffs' patronage through local and national advertising designed "to attract out of state tourists to their resort hotel", *id.* at 1195, and that the cause of action arose from this relationship with the forum. The Court also focused on the fact that the underlying contract was made in Rhode Island (although, presumably, Florida law would apply to the cause of action in tort) and the fact that the defendants had authorized local travel agencies to make reservations for, and accept deposits to confirm from, Rhode Island customers, including plaintiffs, for which a commission would be paid. Although not expressly stated, a fair reading of the facts in *Forsythe* indicates that the travel agency there in question did not have an exclusive arrangement with the defendants and could not confirm reservations without first obtaining approval from the hotel itself, and thus did not represent a deviation from the typical practice.

Like the Florida hotel in *Forsythe,* Preterm solicited customers directly through local and regional advertising and indirectly by soliciting referrals from local organizations. Unlike *Forsythe,* Preterm requires prospective patients to make their own arrangements directly with it and does not pay fees or commissions to referring agencies. However given the nature of its enterprise, the Court does not find these distinctions significant. As a non-profit medi-

cal facility, it is doubtful at best that Preterm could have paid fees for referrals. In this context, the Court concludes that Preterm went about as far as it could go to encourage and solicit Rhode Islanders to use its facilities.

Preterm's focus on Rhode Island distinguishes the *Gelineau-Wright* line of cases cited with reference to Dr. Roberts above. Those cases turned upon the fact that the defendant doctor or hospital had made "no systematic or continuing effort . . . to provide services which are to be felt in the forum state", *Wright, supra* at 290, and a characterization of "the residence of [the] recipient of personal services rendered elsewhere [as] irrelevant and totally incidental to the benefits provided by the defendant at his own location," *Gelineau, supra* at 667.

In making this constitutional inquiry, a court should also assess the interest of the forum in maintenance of the action in its courts and convenience and fairness to the parties. *Whittaker Corp. v. United Aircraft Corp., supra* at 1083. As to the interest of the forum, the Court is persuaded by the plaintiffs' argument, which has not been challenged by the defendant:

"The regular solicitation of Rhode Island patients is the exercise of a privilege far more complex than that exercised by a corporation soliciting for business and profit. If Preterm were a Rhode Island corporation practicing . . . medicine, the State would regulate and inspect its facilities and license its doctors. While Preterm, Inc. and Doctor Roberts are not licensed by Rhode Island, they make their services openly attractive to Rhode Islanders and solicit Rhode Island patients. Where health care is involved, the State has a special interest in regulating the care given its citizens. Rhode Island can exercise no direct control over the standards of the Preterm operation.

\* \* \* \* \* \*

4. In *Scheidt v. Young, supra,* and *Braasch v. Vail Associates, Inc.,* 370 F.Supp. 809 (N.D.Ill. 1973), the courts found contacts with the forum state insufficient to confer *in personam* jurisdiction under circumstances quite similar

to those presented in *Forsythe* and the matter at bar. To the extent that those decisions are indistinguishable, the Court respectfully adheres to its analysis and conclusion in *Forsythe.*

. . . [Preterm] seeks to provide an alternative to services licensed by the State of Rhode Island . . . [and] has solicited in Rhode Island to take patients out of Rhode Island's jurisdiction." Plaintiffs' Memo. at 4–5.

Lastly, the element of convenience and fairness to the parties appears to be evenly balanced in this case. Consequently, the Court concludes that the constitutional limitations of the Due Process Clause are not transgressed by a finding of *in personam* jurisdiction over Preterm in the instant case.

To recapitulate, defendant Roberts' motion to dismiss for lack of personal jurisdiction is granted and defendant Preterm's motion is denied. Plaintiffs shall prepare an order accordingly.