**NEW ENGLAND HEALTH CARE EM-PLOYEES UNION, DISTRICT 1199, a/w Service Employees International Union, AFL–CIO**

v.

**FALL RIVER NURSING HOME, INC.**

Civ. A. No. 92–0288 P.

United States District Court,
D. Rhode Island.

Oct. 6, 1992.

Marc Gursky, Providence, R.I., for plaintiff.

Fausto C. Anguilla, George E. Lieberman, Licht & Semonoff, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This matter is before the Court on Defendant's Motion to Dismiss based upon lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2); improper venue, Fed.R.Civ.P. 12(b)(3); and improper service of process, Fed.R.Civ.P. 12(b)(5). Plaintiff has filed an

objection to Defendant's motion, asserting that jurisdiction, venue, and service are proper. In the alternative, Plaintiff moves that the case be transferred to the U.S. District Court for the District of Massachusetts in Boston. For the reasons set forth below, I find this Court lacks jurisdiction over the person of the Defendant and GRANT Plaintiff's Motion to Transfer.

## I. BACKGROUND

Plaintiff, New England Health Care Employees Union ("Union"), headquartered in Providence, Rhode Island, is the collective bargaining representative for two bargaining units of employees at Defendant Fall River Nursing Home ("FRNH"), located in Fall River, Massachusetts. These units are the service and maintenance unit, consisting of Licensed Practical Nurses ("LPN's"), service, maintenance, and technical employees, and the Registered Nurse ("RN") unit. According to the Complaint, on or about June 1, 1990, the Union and FRNH entered into a collective bargaining agreement implementing annual wage increases of seven percent (7%) as of June 1, 1991 and June 1, 1992, respectively. On or about May 31, 1991, the Union and FRNH entered into a "me too" agreement for the RN unit, whereby FRNH agreed to the terms of the service and maintenance contract for the RN unit. On or about June 1, 1991, FRNH failed and refused to implement the scheduled wage increase under the two agreements, and on June 3, 1991, the Union filed a grievance alleging breach of the agreements.

Pursuant to the collective bargaining agreement, the matter was assigned to an arbitrator for final and binding arbitration under the rules and regulations of the American Arbitration Association. After a hearing on February 7, 1992, the Arbitrator issued an award sustaining the grievance, concluding:

> The Employer violated Article IX of the collective bargaining Agreement by failure to implement the wage increase due in June, 1991. The Employer is ordered to implement the Agreement as written and pay the increases due 6/1/91.

Having failed to obtain satisfaction of the Arbitrator's award, the Union filed this action to enforce the Award and the terms of the collective bargaining agreement.

## II. SUBJECT MATTER JURISDICTION

Plaintiff rests subject matter jurisdiction upon § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, and federal question jurisdiction, 28 U.S.C. § 1331. Defendant does not contest subject matter jurisdiction, and it is clear that federal jurisdiction is authorized under § 301. *See Kemner v. District Council of Painting and Allied Trades No. 36,* 768 F.2d 1115, 1118 (9th Cir.1985) ("A suit to vacate or enforce compliance with an arbitration award can be founded on section 301 of the LMRA") (footnote omitted); *Kallen v. National Union of Hospital & Health Care Employees,* 574 F.2d 723, 725 (2d Cir.1978) ("[F]ederal courts indisputably have jurisdiction to enforce a labor arbitration award").[1]

## III. JURISDICTION OVER THE PERSON

Defendant FRNH argues vehemently that, as a Massachusetts corporation with few, if any, business contacts with Rhode Island, this Court lacks in personam jurisdiction and cannot entertain the claims presented. According to the affidavit of Douglas Lash, President of FRNH, Defendant is neither licensed nor registered to do business in Rhode Island. Defendant maintains no telephone listing, office or

---

1. Plaintiff relies upon § 9 of the United States Arbitration Act ("USAA"), 9 U.S.C. § 9, as an alternative basis for federal subject matter jurisdiction. There is some dispute in the Circuits, however, as to whether collective bargaining agreements are "contracts of employment" within the meaning of the section of the USAA excluding "contracts of employment" from the Act's coverage. *See* 9 U.S.C. § 12. Because there is an adequate basis for federal question jurisdiction under the LMRA, I decline to address this question. For an excellent discussion of the issue, see *American Postal Workers Union, AFL-CIO v. United States Postal Service,* 823 F.2d 466 (11th Cir.1987).

bank accounts in Rhode Island, and has no employees who work in Rhode Island. Further, Defendant has no real property interests in the state, pays no state taxes, does not have a registered agent for service of process, and does not currently advertise in Rhode Island.

Plaintiff, relying on *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080 (1st Cir.1992), and this Court's indisputable federal question subject matter jurisdiction, asserts that FRNH's contacts with the United States, alone, are adequate to satisfy the requirements of in personam jurisdiction *as a matter of law.* Plaintiff's specter of nationwide personal jurisdiction in *all* federal question cases,[2] however, cannot withstand rigorous analytical scrutiny.

In *163 Pleasant Street Corp.*, Judge Selya provides a learned and detailed exegesis of personal jurisdiction in federal question cases. First, he raises the important distinction between federal question and diversity jurisdiction actions in determining the constitutional lens through which courts must frame the jurisdictional issue. In diversity cases, he notes, the focal point of the personal jurisdiction analysis is, "of necessity, the Fourteenth Amendment." 960 F.2d at 1085. However:

[w]hen a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, *in the first instance,* not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment. *Id.,* citing *Lorelei Corp. v. County of Gua-*

*dalupe,* 940 F.2d 717, 719 (1st Cir.1991) (per curiam) (emphasis added).

Thus, for the purposes of the Fifth Amendment, "minimum contacts" with the United States rather than with the particular forum state are all that is constitutionally required.

■ Plaintiff would like to end the discussion here, authorizing nationwide personal jurisdiction in almost every conceivable federal question case. But just as Congress has power under the Constitution to limit the subject matter jurisdiction of the federal courts, so does it have power to determine the reach of the federal courts' in personam jurisdiction. Thus, *in the second instance,* the basis for service of process returnable to a particular court (the procedure by which the court obtains personal jurisdiction) must be grounded within a federal statute or a Civil Rule. *See 163 Pleasant Street Corp.*, 960 F.2d at 1085 ("though personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction").

Civil Rule 4 provides the general rule for service of process in the federal courts.[3] Generally, Rule 4(f) limits service of process "to the territorial limits of the state in which the court is held." *Johnson Creative Arts, Inc. v. Woolmasters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984). Under certain circumstances, however, nationwide or worldwide service of process may be had under federal statutes. *See* 2 James W. Moore et al., *Moore's Federal Practice* § 4.42[2.–1] (2d ed. 1991) (listing statutes).

---

**2.** As distinguished from those cases where a federal statute authorizes nationwide or extraterritorial service.

**3.** The rule states in relevant part:
Whenever a statute of the United States ... provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute ... or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court

is held provides ... for service of a summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.
Fed.R.Civ.P. 4(e).
All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state....
Fed.R.Civ.P. 4(f).

Rule 4(e) explicitly authorizes extraterritorial service in these instances.

■ Summarizing so far, a federal court's in personam jurisdiction in federal question cases is constitutionally limited only by the Due Process Clause of the Fifth Amendment. The mechanism by which personal jurisdiction is obtained (service of process), however, places a *statutory* limitation on the extent of the court's in personam jurisdiction. Absent Congressional authorization by federal statute or Civil Rule allowing for extraterritorial service, Rule 4(e) allows such service "only to the extent permitted by the law of the state in which the district court sits." *Lorelei,* 940 F.2d at 720. Herein lies Plaintiff's misunderstanding of the jurisdictional issue. Because the Fourteenth Amendment limits a state's exercise of extraterritorial jurisdiction, the minimum contacts analysis of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), acts indirectly as a check on the exercise of personal jurisdiction in federal question cases. *See 163 Pleasant Street Corp.,* 960 F.2d at 1086.

The inherent contradictions in this statutory scheme have not been lost on students of jurisdiction and procedure. *See* David D. Siegel, *Practice Commentaries,* United States Code Annotated, 28 U.S.C.A., Rule 4, at pp. 141–44 (1992). Why should Congress allow the states, in effect, to impose direct limitations on the power of the federal courts through enactment of restrictive state jurisdictional statutes? And why not have a uniform federal test for in personam jurisdiction in the federal courts in federal question cases? These questions, while troubling, are peculiarly suited for legislative discussion and cannot be addressed here. It must suffice to note, at the moment, that "Congress has chosen, as the point is sometimes phrased ... to have the federal courts march in 'lockstep' with the state courts even though the federal courts need not be so shackled and could be released for a much longer march." Siegal, *Commentaries,* at 142 (citing *United Rope Distributors, Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 535 (7th Cir. 1991)).

The LMRA makes no provision for either nationwide or worldwide service. *See Central Operating Co. v. Utility Workers of Am.,* 491 F.2d 245, 249–50 (4th Cir.1974). Following the teachings of this Circuit in *163 Pleasant Street Corp.* and *Lorelei,* the Court must now consider the Plaintiff's jurisdictional claims in light of Rhode Island law; more specifically, Rhode Island's "long-arm" statute.

## A. Rhode Island Law

■ The Rhode Island long-arm statute, R.I.G.L. § 9–5–33, permits jurisdiction to the fullest extent permitted by the federal constitution. *Almeida v. Radovsky,* 506 A.2d 1373, 1374 (R.I.1986); *Roger Williams Gen. Hosp. v. Fall River Trust Co.,* 423 A.2d 1384 (R.I.1981). Thus, a person who has the sufficient "minimum contacts" with Rhode Island may be subject to the District Court of Rhode Island's personal jurisdiction. *Omni Video Games, Inc. v. Wing Co.,* 754 F.Supp. 261, 263 (D.R.I.1991).

The minimum contacts standard asks whether the defendant has sufficient contacts with the forum state that compelling it to defend a lawsuit "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The court must examine the connections between the defendant, the forum, and the litigation, *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984), and consider whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hauled into court" in that forum. *World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Additionally, a defendant must have "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Keeton v. Hustler Magazine, Inc.,* 465 U.S.

770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (purposeful availment requirement assures that jurisdiction will not be based solely upon a defendant's "random, isolated, or fortuitous" contacts with the forum state); *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 983 (1st Cir.1986). Finally, while the Plaintiff bears the burden of establishing the existence of personal jurisdiction, *KVH Industries, Inc. v. Moore*, 789 F.Supp. 69, 71 (D.R.I.1992), a district court must accept properly supported proffers of evidence by a plaintiff as true. *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992).

Recent Supreme Court cases exploring personal jurisdiction have centered on the actions of the defendant. The Supreme Court refined the "minimum contacts" test by holding that the substantial connection between the defendant and the forum state "necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state." *Asahi Metal Industry Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109–10, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987). A non-resident defendant need not physically enter a forum to establish personal jurisdiction if the defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Even where purposefully generated contacts exist, courts must consider a panoply of other factors that bear upon the fairness of subjecting a non-resident to the authority of a foreign tribunal. *See Donatelli v. National Hockey League*, 893 F.2d 459, 464–65 (1st Cir.1990).

### B. Specific Jurisdiction

In *International Shoe*, the Supreme Court also emphasized the importance of distinguishing between "specific" personal jurisdiction (*i.e.*, jurisdiction which a state may assert when a suit arises directly out of forum-based activities) and "general" personal jurisdiction (*i.e.*, jurisdiction which may be asserted in connection with suits not directly founded on forum-based conduct). 326 U.S. 310, 317–18, 66 S.Ct. 154, 158–59. Plaintiff's action to enforce the arbitration award, on its face, does not in any way directly arise from the Defendant's activities in Rhode Island. Plaintiff asserts that the contractual relationship between the Union, which is located in Providence, and FRNH, and the course of dealing between the two, is sufficient to provide the basis for specific in personam jurisdiction. I cannot agree.

■ Merely contracting with a party who resides in the desired forum is insufficient to subject a non-resident to the forum's jurisdiction. *Colwell Realty Invest., Inc. v. Triple T Inns, Inc.*, 785 F.2d 1330, 1334 (5th Cir.1986). *See also Maurice Sternberg, Inc. v. James*, 577 F.Supp. 882 (N.D.Ill.1984) (although any contract involving Illinois party inevitably involves contact with the state, that fact alone insufficient for jurisdictional purposes under a long-arm statute). Moreover, the Supreme Court has emphasized that the specific in personam jurisdiction analysis focuses on the activities of the *defendant* in the forum, not the residence or location of the plaintiff. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). While regular correspondence from FRNH to Union staff concerning grievances, policy changes and personnel information flowed back and forth between the parties over the years, none of the Defendant's activities with respect to the breach of the collective bargaining Agreement or its refusal to comply with the arbitral award took place in Rhode Island. *See* Defendant's Motion to Dismiss, at 12–13; Affidavit of Douglas Lash, at 2 (Exhibit A to Defendant's Motion). Because Plaintiff Union's claims do not arise out of, and are not directly related to, Defendant FRNH's contacts with Rhode Island, specific jurisdiction is lacking. *See Helicopteros*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8.

### C. General Jurisdiction

■ In the absence of specific jurisdiction, the Plaintiff must show the existence of general jurisdiction over the Defendant

in order to maintain this action in Rhode Island. "Although minimum contacts suffice in and of themselves for specific jurisdiction ... the standard for general jurisdiction is considerably more stringent." *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir.1984). A corporation's "single or isolated items of activities in a state ... are not enough to subject it to suit on causes of action unconnected with the activities there." *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 159.

Plaintiff asserts that Defendant's advertising activity, relationships with vendors, personnel living in Rhode Island, patient load from Rhode Island, and affiliation with the VA Hospital in Providence, all support this Court's exercise of general jurisdiction. Petitioner's Objection to Defendant's Motion to Dismiss, at 7–8; Affidavit of Shirley Brodeur, at 1–2 (Exhibit C to Plaintiff's Objection). Specifically, Plaintiff points to two out-dated advertisements purchased by Defendant in 1988 and 1990 in the Newport and Vicinity Yellow Pages. The Court agrees with Defendant that these isolated advertisements are not enough to subject FRNH to general in personam jurisdiction in Rhode Island.

Plaintiff's logic with respect to the location in Rhode Island of one of Defendant FRNH's largest medical supply vendors must also fail. Mere purchases in the forum state, even if occurring at regular intervals, are not enough to warrant a state's assertion of personal jurisdiction over a non-resident corporation in a cause of action not related to those purchase transactions. *Helicopteros*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1874. Plaintiff has not alleged any connection between the Defendant's purchases of medical supplies in Rhode Island and the Plaintiff's cause of action, nor can I discern one from the pleadings and affidavits presented. Plaintiff's assertions of contacts with respect to members of the Union's bargaining unit who are Rhode Island citizens must fail, as well, for it is contact with a forum state, not its residents, that is pertinent. *See Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418 (11th Cir.1986) (Non-resident employers did not subject themselves to the jurisdiction of Alabama by the simple act of employing an Alabama resident to perform services outside of Alabama).

Finally, Plaintiff's allegations with respect to patients of the Defendant and Defendant's affiliation with the VA hospital in Providence, while more plausible, still cannot support a finding of general jurisdiction. At issue is whether or not the Defendant actively solicited business and/or patients in a routine manner and thereby profited from its solicitation or connection with Rhode Island residents.

In *Soares v. Roberts*, 417 F.Supp. 304 (D.R.I.1976), this Court found that the defendant health clinic,

by knowingly soliciting Rhode Island Residents on a continuing basis to utilize its medical facilities, 'purposely avail[ed] itself of the privilege of conducting activities within the forum state,' and ha[d] submitted itself to the jurisdiction of the Rhode Island courts at least as to those individuals whose business the solicitation was designed to obtain. *Id.* at 308 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

While the facts of *Soares* are arguably analogous, it is clear that the court was hesitant to extend general personal jurisdiction where the claim did not relate to those individuals who were solicited. Here, although Defendant FRNH may have solicited business from the VA while acting as a contract nursing home, or may have solicited patients in Rhode Island, these activities alone cannot support a finding of general jurisdiction in a suit over a contract between the Defendant and its employees.

Even acknowledging that minimum contacts analysis calls for a cumulative examination of the Defendant's activities in the forum, the Plaintiff has not alleged sufficient contacts for this Court to exercise personal jurisdiction over Defendant FRNH. Lacking the requisite minimum contacts, there is no need to address constitutional "notions of fair play and substantial justice," the second step in the personal

jurisdiction analysis. *See Donatelli,* 893 F.2d at 465.

## IV. PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff has moved under Rule 11 of the Federal Rules of Civil Procedure that the Court impose fees on Defendant FRNH to cover a portion of the Union's reasonable expenses, including attorney's fees, incurred in defending against Defendant's Motion to Dismiss. Defendant FRNH, Plaintiff claims, "knew or reasonably should have known 'after reasonable inquiry' that its venue and personal jurisdiction claims were not 'warranted by existing law,' [and that] these meritless claims represent violations of Rule 11." Plaintiff's Objection, at 11–12. While Rule 11 gives the Court discretion to impose an appropriate sanction, including the award of attorney's fees, in the event of a violation of the Rule, I find scant evidence to support a finding of such a violation in this case. As the First Circuit recently noted:

> In the late 1930's, Winston Churchill disclaimed any ability to forecast the Soviet Union's reaction to Nazi aggression, reputedly terming the Russian colossus "a riddle wrapped in a mystery inside an enigma." That phrase might just as aptly describe the doctrinal vagaries of the concept of personal jurisdiction. *Donatelli,* 893 F.2d at 462.

Thus, barring some extreme circumstance, I find it difficult to impose the penalty of Rule 11 sanctions on jurists struggling with this difficult, ill-defined, and peculiarly fact-based concept.

## V. PLAINTIFF'S MOTION TO TRANSFER

Plaintiff has moved, albeit cryptically, for a transfer to the District Court for the District of Massachusetts. Section 1404(a) of Title 28, 28 U.S.C. § 1404(a), states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." On the record currently before me, the District of Massachusetts appears to be a more appropriate forum for this action. In the interest of justice, and lacking in personam jurisdiction over the Defendant,[4] I believe a transfer to Massachusetts rather than a dismissal will provide the best resolution to this matter.

## V. CONCLUSION

While this Court indisputably has subject matter jurisdiction over this action, Plaintiff has failed to allege facts sufficient to support a finding of in personam jurisdiction over Defendant FRNH. Exercising this Court's discretion under 28 U.S.C. § 1404(a), however, I GRANT Plaintiff's Motion to Transfer the action to the United States District Court for the District of Massachusetts. Defendant's Motion to Dismiss is DENIED. Plaintiff's Motion for sanctions is DENIED.

SO ORDERED.

---

**4.** *See Hernandez v. Graebel Van Lines,* 761 F.Supp. 983 (E.D.N.Y.1991) (District Court has power to transfer venue to another district court even in absence of jurisdiction over defendant);

*Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446 (W.D.N.C. 1989) (same).