**Claire KENERSON, et al., Plaintiffs,**

v.

**Charles STEVENSON, M.D. and Carl Lindblade and the Memorial Hospital, Defendants.**

**Civ. No. 83–0070–P.**

United States District Court,
D. Maine.

March 19, 1985.

Dennis Levandoski, Portland, Maine, for plaintiffs.

John N. Kelly, Graydon G. Stevens, Portland, Maine, for Charles Stevenson.

John J. Flaherty, Christopher Nyhan, Portland, Maine, for Lindeblade & Hospital.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS OF DEFENDANTS, THE MEMORIAL HOSPITAL AND CARL LINDBLADE

GENE CARTER, District Judge.

This wrongful death action, for alleged medical malpractice is before the Court on the motion of the Defendants, The Memorial Hospital and Carl Lindblade, to dismiss the complaint for lack of *in personam* jurisdiction. The record shows that Plaintiffs' decedent, Reginald Kenerson, a Maine resident, fell and was injured in New Hampshire in March 1981. As a result of injuries sustained in the fall, he was taken to the Defendant, The Memorial Hospital in North Conway, New Hampshire, of which Defendant Lindblade is president and a trustee, where he was treated by Defendant Stevenson. The record also shows that several hours later, when Kenerson's condition worsened, Dr. Stevenson consulted by telepohone with a neurosurgeon at the Maine Medical Center in Portland, Maine, and later arranged to have Kenerson transferred to that hospital. He died in Gorham, Maine, en route to the Portland hospital.

Plaintiffs brought suit in Maine Superior Court in February 1983 against Stevenson,

the Hospital, and Lindblade. The action was removed to this Court by Defendant Stevenson.[1] In July 1983, after the applicable statute of limitations had run, Defendants, The Memorial Hospital and Lindblade, filed the pending motions to dismiss. The motions were initially considered by the United States Magistrate, D. Brock Hornby, who recommended by his decision of October 6, 1983, that the motions be granted. After a preliminary review initiated by the Plaintiffs' Objection to Magistrate's Recommended Decision, filed on October 21, 1983, this Court entered its Memorandum and Order of January 17, 1984, in which it is noted:

> This Court is not fully satisfied that the contacts between Maine and the Defendants set forth in the pleadings and offer of proof are necessarily sufficient to support an exercise of jurisdiction by this Court. They are, however, suggestive of further contacts which, because of the sparsity of the present record, cannot be definitively explored by this Court. The possibility of more extensive contacts is perhaps further reinforced by Defendants' invocation of a Maine statutory privilege. Since it appears that the statute of limitations has run, dismissal of this suit for lack of personal jurisdiction would probably have the practical effect of forever precluding Plaintiffs' claim for relief. Because of the importance to the parties of the decision on this motion and because it is difficult to determine the full extent of the Defendants' contacts with Maine from the existing record, the Court finds it necessary to establish a stronger factual basis before attempting to decide this issue.

Memorandum and Order at 4. Accordingly, the Court ordered that the matter be set for an evidentiary hearing before this Court "for the purpose of developing the facts concerning the circumstances of Defendant's relationship with the State of Maine." *Id.* The Court detailed those specific areas of evidentiary inquiry which it wished the parties to undertake at such hearing. *Id.* at 4–5.

A prehearing scheduling conference was held before this Court on March 14, 1984, resulting in the filing of this Court's Report of Prehearing Scheduling Conference and Order on March 16, 1984. The record was supplemented by a Stipulation of counsel, filed on May 22, 1984, and the Affidavit of the Defendant Charles Stevenson, filed on May 8, 1984. Also included in the record is the Affidavit of Gary R. Poquette, with attachments, filed on February 24, 1984. Evidence was taken at the hearing on September 6, 1984.

The exercise by this Court of personal jurisdiction over these Defendants must be authorized by Maine law and must conform with federal due process. *Wass v. American Safety Equipment Corp.*, 573 F.Supp. 39, 42 n. 7 (D.Me.1983). This Court has previously stated the law applicable to the required inquiry:

> The limits of personal jurisdiction under Maine law are coextensive with the federal due process requirements. *See Architectual Woodcraft Co. v. Read*, 464 A.2d 210, 212 (Me.1983); *Labbe v. Nissen Corp.*, 404 A.2d 564, 569 (Me.1979).
>
>> Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' *International Shoe Co. v. Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95], (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278] (1940). When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential

---

1. The Magistrate denied Plaintiffs' motion to remand on the grounds that their four month delay in bringing the motion was consistent with a waiver of the right to seek a remand to state court. Recommended Decision, at 2.

foundation of *in personam* jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 204 [97 S.Ct. 2569, 2579, 53 L.Ed.2d 683] (1977).

Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485] (1952). *Helicopteros Nacionales de Colombia v. Hall,* — U.S. —, —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). [footnotes omitted].

*Helicopteros* and earlier Supreme Court decisions prescribe a three-step analysis. First, the defendant must have some contact with the forum state; if it does not, due process prohibits the exercise of *in personam* jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed. 490 (1980). If the defendant has forum contacts, the court must proceed to the second step in its analysis: whether the suit arises out of or is related to defendant's forum contacts? The answer to this question determines the test to be applied in the third step of the analysis. If the suit arises out of or relates to the defendant's forum contacts, the critical question becomes whether the relationship among the defendant, the forum and the litigation forms a fair and reasonable foundation for the exercise of jurisdiction over the defendant. But if the cause of action does not arise out of and is not related to the defendant's forum contacts, the court considers only the relationship between the forum state and the foreign defendant. In such a case, *Helicopteros* seems to hold that the exercise of personal jurisdiction is appropriate only if the defendant has "continuous and systematic general business contacts" with the forum state, *Id.* — U.S. at —, 104 S.Ct. at 1873.

*Jones v. North American Aerodynamics, Inc.,* 594 F.Supp. 657, 659 (D.Me:1984) (per Cyr, C.J.).

■ It is clear beyond any doubt that the claim for relief asserted by the Plaintiffs in this case does not arise out of any acts or activities of the Defendants, The Memorial Hospital or Lindblade, conducted within the State of Maine.[2] All medical treatment received by the Plaintiffs' decedent, up to the point that the decision was made to transfer the decedent to the Maine Medical Center, was accomplished within the State of New Hampshire and was in respect to an injury received in the State of New Hampshire which resulted in the decedent being presented to the New Hampshire hospital and its resident doctors and staff for treatment. Thus, the claim for relief arises out of and is not related to contacts the Defendants may have with the forum of Maine.

The operative inquiry, therefore, becomes the substance and significance of the relationship between the forum state (Maine) and the foreign Defendants (The Memorial Hospital and Lindblade). Juris-

---

**2.** Paragraphs 12–14 and 17 of the Complaint show clearly that the claim arises from treatment and diagnosis of decedent that took place in New Hampshire:

12. Had appropriate steps been taken to examine Reginald Kenerson and ascertain the extent of his injuries in a timely fashion, the seriousness of his head injury would have been known several hours earlier.
13. Had appropriate steps been taken, defendant Charles Stevenson would have realized the importance of promptly transporting Reginald Kenerson and he would have arrived in Portland in sufficient time to save his life.
14. Reginald Kenerson's brain injury and subsequent death was the direct and proximate result of the failure of Charles Stevenson and the Memorial Hospital to take reasonable steps to diagnose the injury.
17. Defendant Memorial Hospital and its trustees were under a continuing duty to exercise due care to ensure that persons in its employ are so skilled and conscientious that they would not fail to take adequate steps to promptly diagnose a serious head injury.

diction may be maintained in such circumstance only if the defendants have "continuous and systematic general business contacts" with the State of Maine. *Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). The case presents an issue, in short, of "general jurisdiction."

▇ It is well established in this circuit that general jurisdiction "may be found in the absence of a relationship between a nonresident defendant's contacts with the forum and the cause of action where the defendant engages in the 'continuous and systematic' pursuit of general business activities in the forum state." *Glater v. Eli Lilley and Co.,* 744 F.2d 213, 216 (1st Cir. 1984); *American Freedom Train Foundation v. Spurney,* 747 F.2d 1069, 1075 (1st Cir.1984). This is fully consistent with the Maine law on this point. *Martin v. Deschenes,* 468 A.2d 618 (Me.1983) ("The commission outside the forum state of an act that has consequences in the forum state is by itself an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state.").

▇ Plaintiffs bear the burden "to prove the facts necessary to sustain jurisdiction." *American Freedom Train Foundation,* 747 F.2d at 1075. The Court concludes that the evidentiary filings in this Court, together with testimony taken in the hearing before this Court since the consideration of this matter by the United States Magistrate, establish the existence of "general jurisdiction" over the Defendant, The Memorial Hospital, and over the Defendant, Lindblade, in his representative capacity for the Defendant hospital. A showing has been made that the Defendants had "continuous and systematic general business contacts" with the State of Maine substantial enough to satisfy due process requirements for purposes of the exercise of Maine's jurisdictional authority over them. *Helicopteros,* —— U.S. at ——, 104 S.Ct. at 1873, 80 L.Ed.2d at 412.

The most salient and forceful evidence of such contacts is that in the period 1980–83, the Hospital treated a total of 432 Maine residents as in-patients. This Maine in-patient caseload constituted between seven and eight and one half percent of the hospital's total annual in-patient caseload over that period. In addition, for the same period, the hospital treated a total of 7,854 Maine residents as out-patients. In the year 1981 this constituted thirteen percent of the hospital's total out-patient caseload; in 1982, eleven and one half percent; and in 1983, seven percent. Affidavit of Gary R. Pouquette, at 2. Nearly one third of the hospital's patients transferred to the Maine Medical Center in 1981 were Maine residents. *Id.* at 3. Ten out of forty-seven patients transferred to other hospitals were Maine residents. *Id.* After October 29, 1982, the hospital was a participant in the REMIS (Regional Emergency Medical Information System) protocol, which contemplates emergency transfer of patients from the Defendant hospital to the Maine Medical Center in Portland, Maine, as well as to other hospitals. Finally, the hospital does have a regular relationship with the Maine Department of Human Services by which it receives medical aid or reimbursement from that state agency out of federal funds provided to the agency which are available to qualified residents of Maine who are treated at the Defendant hospital. Such contacts, taken *in toto,* are sufficient for purposes of satisfaction of due process requirements in respect to exercise of jurisdiction over a foreign defendant. *See Lemke v. St. Margaret Hospital,* 552 F.Supp. 833 (N.D.Ill.1982).

The Memorial Hospital is an essentially local entity in the respects that its physical facilities are in New Hampshire and its services are generally provided there. By the nature of the functions and services it performs, however, it may fairly be considered to be tacitly holding itself out to provide, and in fact providing, emergency and other medical services to residents of the surrounding region, irrespective of state lines. The evidence establishes that such a tacit solicitation does in fact generate "continuous and systematic general business contacts" with residents of the

State of Maine. The hospital cannot reasonably expect, in view of the substantiality of these contacts, not to be "haled into court" in Maine when claims arise from treatment extended to Maine residents on the basis of such a continuous and systematic business practice. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Memorial Hospital is under a significant obligation to treat whoever requires emergency medical attention. However, the hospital's acceptance of this institutional obligation is in a legal sense voluntary and does not substantially dilute the "purposeful" quality of its conduct in caring for patients from the State of Maine with the expectation that it will be ultimately paid for the services rendered to such patients.

The Court need not reach the issue of whether an order changing venue to the District of New Hampshire under 28 U.S.C. § 1404 will cure a jurisdictional defect of the type here alleged to be in issue. *See Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Schwilm v. Holbrook,* 661 F.2d 12 (3d Cir.1981).

Thus, having reviewed and considered the Magistrate's Recommended Decision on Motion to Dismiss, together with the entire record in this matter, as supplemented by the evidentiary hearing held before this Court, this Court has made a *de novo* determination of those portions of the Magistrate's Report and Recommended Decision to which objection is made. *See* 28 U.S.C. § 636(b)(1)(C). The Recommended Decision of the Magistrate is REVERSED and the Motion to Dismiss for Lack of *in personam* Jurisdiction filed on behalf of the Defendants, The Memorial Hospital and Lindblade, is DENIED.

So ORDERED.