# United States Court of Appeals
## For the First Circuit

---

No. 09-1550

AMANDA COSSABOON,

Plaintiff, Appellant,

v.

MAINE MEDICAL CENTER,

Defendant, Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

---

Before

Boudin, Stahl and Lipez,
Circuit Judges.

---

Matthew R. Serge, with whom Heather M. Burns, Upton & Hatfield, LLP was on brief, for appellant.
Gerald F. Petruccelli, with whom Petruccelli, Martin & Haddow, LLP was on brief, for appellee.

---

March 25, 2010

---

**LIPEZ**, **Circuit Judge**.     Plaintiff Amanda Cossaboon, individually and as mother and next friend of E.C., appeals from the district court's dismissal of her medical malpractice action against defendant Maine Medical Center (MMC) for lack of personal jurisdiction.  Cossaboon contends that MMC purposefully established sufficient contacts with New Hampshire to permit the exercise of general personal jurisdiction in New Hampshire.  We disagree and affirm.

## I.

On June 3, 2008, Cossaboon, a New Hampshire resident, filed this medical malpractice action against MMC in New Hampshire Superior Court.  Cossaboon alleged that on April 15, 2007, she gave birth to twin daughters at Portsmouth Hospital in New Hampshire. The twins were born prematurely, and E.C., upon referral from her New Hampshire physician, was transferred to the neonatal intensive care unit at MMC four hours after her birth.  On May 1, 2007, an employee of MMC placed a hot, wet diaper on E.C.'s heel.  The diaper burned E.C.'s heel, causing scarring and requiring additional medical services.  Cossaboon alleged that MMC breached the standard of care by placing the hot diaper on E.C.'s foot, and sought compensation, individually and as mother and next friend of E.C., for the resulting injury and economic losses.

MMC removed the action to federal court on the basis of diversity of citizenship on June 30, 2008, and later moved to

dismiss for lack of personal jurisdiction. Cossaboon opposed the motion to dismiss, contending that MMC was subject to both specific and general personal jurisdiction. After hearing argument from counsel, the district court granted MMC's motion to dismiss.

The court concluded that MMC was not subject to specific personal jurisdiction because Cossaboon's claim did not directly relate to or arise from MMC's activities in New Hampshire. Instead, the act from which the claim arose, the application of the hot diaper to E.C.'s heel, occurred in Maine nearly two weeks after E.C.'s transfer from Portsmouth Hospital to MMC. The court further determined that MMC was not subject to general personal jurisdiction because MMC had not purposefully established "continuous and systematic" contacts with New Hampshire. In light of its conclusion that MMC was not subject to either specific or general jurisdiction, the court found it unnecessary to reach the issue of whether New Hampshire's long-arm statute conferred jurisdiction over MMC.[1]

---

[1] In addition to constitutional requirements, an exercise of jurisdiction over an out-of-state defendant must be authorized by the forum's long-arm statute. Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). In its motion to dismiss, MMC contended that no New Hampshire statute asserted long-arm personal jurisdiction over foreign not-for-profit corporations such as MMC. Cossaboon countered that New Hampshire's long-arm legislation authorized jurisdiction over foreign corporations to the full extent permitted by due process. We, like the district court, find it unnecessary to address this issue.

Cossaboon filed this timely appeal, challenging only the district court's ruling that MMC is not subject to general personal jurisdiction.

**II.**

**A. Jurisdictional Facts**

For purposes of the general jurisdiction analysis, we "consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir. 2005). The relevant facts in this case are largely undisputed.

Cossaboon is a New Hampshire resident. MMC is a not-for-profit corporation organized in the state of Maine with its principal place of business in Portland, Maine. MMC does not hold any license from the state of New Hampshire, and does not own, lease, or occupy any real property in New Hampshire. It does not employ any physicians, nurses or other healthcare professionals who provide professional services in New Hampshire and does not require employees to hold medical licenses from New Hampshire.

At the time that E.C.'s injury occurred, MMC was registered to do business in New Hampshire as a foreign not-for-profit corporation, and had registered the trade name "Northern New England Poison Control Center." On its Application for Registration of a Foreign Nonprofit Corporation, MMC stated that the "principal purpose or purposes which it proposes to pursue in

-4-

the transaction of business in New Hampshire" was "including but not limited to poison control center serv[ic]es."  The Northern New England Poison Control Center (Poison Control Center) operates a poison hotline in Portland, Maine that accepts phone calls from New Hampshire, Maine and Vermont.  All calls to the Poison Control Center are handled by MMC personnel in Portland; MMC provides no poison-related medical services other than at locations in Portland.  At the time of E.C.'s injury, MMC employed one person in New Hampshire.  That employee did not provide medical services in New Hampshire, but was employed to provide education and consultation services to healthcare providers, educators, first responders and others interested in the work of the Poison Control Center.[2]

MMC does not purchase advertisements in any New Hampshire-based newspapers, telephone directories or television or radio stations.  MMC does issue periodic press releases to a range of media outlets, including two New Hampshire-based newspapers (Foster's Daily Democrat and the Portsmouth Herald) and a few regional and national news outlets that reach New Hampshire (such as The Boston Globe and New England Cable News).  MMC has placed job listings in the regional trade publication HealthCare Review, which is produced in New Hampshire.  MMC also advertises on radio

---

[2] MMC employed this New Hampshire-based employee from November 8, 2004 to September 1, 2007.

and television stations whose signals may reach parts of New Hampshire, including WGME, a television station broadcast from southern Maine.

MMC operates a website that provides information about the hospital's services and staff. The website allows users to make online charitable donations to the hospital, complete patient pre-registration, register for classes and events, find a doctor, and apply for an employment position at the hospital. The website describes certain hospital services and programs, four of which mention that MMC serves patients from New Hampshire.

MMC participates in the Regional Emergency Medical Information System (REMIS), a twenty-four-hour communication center that facilitates transfers to MMC from other hospitals and caregivers. When a caregiver calls MMC with a request to transfer a patient, REMIS facilitates communications related to patient status, bed availability, and other information necessary for the transfer. Contacts regarding transfer to MMC are initiated by the patients' caregivers. MMC has no agreements with New Hampshire physicians under which patients are directed to MMC for medical services.

MMC has also entered into an agreement with Dartmouth Medical School in New Hampshire whereby medical students at Dartmouth may be placed at MMC for clinical training rotations.

The agreement specifies that the Dartmouth students are present at MMC "in their learning capacity" and not as employees of MMC.

Finally, MMC treats patients from New Hampshire at its Portland hospital. In the approximately two years before Cossaboon filed suit, New Hampshire residents represented approximately 1.23% of all patients treated at MMC, whether admitted as in-patients or treated as out-patients (8,107 New Hampshire patients out of a total of 660,524 patients). In 2006 and 2007, New Hampshire residents admitted as in-patients at MMC represented 2.9% of all in-patient admissions to MMC. New Hampshire residents represented a somewhat higher percentage of patients admitted to the neonatal unit at MMC, approximately 8.8% of neonatal admissions in 2007.

A portion of MMC's revenue is derived from its treatment of New Hampshire residents. In the roughly two years prior to Cossaboon's suit, MMC received approximately $72,537,073 in payments for treatment of New Hampshire residents. These payments represented approximately 3.24% of MMC's total revenue for this period. MMC received $2,613,951 in payments from New Hampshire Medicaid, .001% of MMC's total revenue during this period.

## B. Legal Background on Personal Jurisdiction

### 1. Standard of Review

Where, as here, the district court "held no evidentiary hearing but instead conducted only a prima facie review of the jurisdictional facts," we review de novo the district court's

decision to dismiss for lack of personal jurisdiction. <u>Harlow</u>, 432 F.3d at 57 (quotation marks and citation omitted). In reviewing a decision made under the prima facie standard, we consider the plaintiff's allegations "so far as evidence supports them after preliminary jurisdictional discovery." <u>Jet Wine & Spirits, Inc.</u> v. <u>Bacardi & Co.</u>, 298 F.3d 1, 4 (1st Cir. 2002); <u>see</u> <u>United States</u> v. <u>Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 619 (1st Cir. 2001) (holding that the prima facie showing "must be based upon evidence of specific facts set forth in the record") (quotation marks and citation omitted). In addition, "[w]e then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." <u>Mass. Sch. of Law at Andover, Inc.</u> v. <u>Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998). The plaintiff "ultimately bears the burden of persuading the court that jurisdiction exists." <u>Id.</u>

2. Due Process Requirements

Personal jurisdiction may be either general or specific. <u>Harlow</u>, 432 F.3d at 57. Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." <u>Pritzker</u> v. <u>Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994) (internal quotation marks and citation omitted); <u>see</u> <u>Glater</u> v. <u>Eli Lilly & Co.</u>, 744 F.2d 213, 215 (1st Cir. 1984) (stating that specific jurisdiction is based on "the relationship among the defendant, the forum, and the litigation").

General jurisdiction, by contrast, "may be asserted in connection with suits not directly founded on [that defendant's] forum-based conduct. . . ." Pritzker, 42 F.3d at 59 (quotation marks and citation omitted). General jurisdiction broadly subjects the defendant to suit in the forum state's courts "in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). On appeal, Cossaboon has abandoned her claim of specific jurisdiction and contends only that MMC is subject to general jurisdiction.

Constitutional limitations on the exercise of personal jurisdiction over out-of-state defendants are rooted in principles of "fundamental fairness." Id. at 288. The due process clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). As such, a court is precluded from asserting jurisdiction unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Based on the precedents of the Supreme Court, we have read the due process clause to impose three requirements on the

exercise of general jurisdiction over out-of-state defendants. Harlow, 432 F.3d at 57. To justify the exercise of general jurisdiction, (1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances. Id.

In order to satisfy the first requirement, the defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (internal quotation marks and citation omitted). Although a showing of "minimum contacts" is sufficient to establish specific jurisdiction, the standard for establishing general jurisdiction is "considerably more stringent." Glater, 744 F.2d at 216. To permit the exercise of general jurisdiction, the defendant must "engage[] in the 'continuous and systematic' pursuit of general business activities in the forum state." Id. (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 448 (1952)); see 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5 (3d ed. 2002) ("[T]he defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction.)"

Under the second requirement, the defendant's contacts with the state must be "purposeful." Harlow, 432 F.3d at 57. That is, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment test "focuses on the defendant's intentionality," Swiss Am. Bank, 274 F.3d at 623, and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Id. at 624. This requirement ensures that a defendant will not be subjected to personal jurisdiction on the basis of "random, fortuitous, or attenuated contacts" or "the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475 (internal quotation marks and citations omitted).

Our analysis of whether a defendant's contacts with the forum state satisfy these first two requirements is not "simply mechanical or quantitative," but instead depends upon the "quality and nature" of the defendant's activity in the forum state. Int'l Shoe, 326 U.S. at 319. The inquiry is "highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker, 42

F.3d at 60. Although our inquiry is fact-specific, it is "guided by the types of contacts deemed sufficiently continuous and systematic in other cases." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998).

Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances."[3] Harlow, 432 F.3d at 57. The reasonableness inquiry is "secondary rather than primary; unless the defendant has some cognizable contacts with the proposed forum, the court cannot assert general jurisdiction." Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990) (quotation marks and citation omitted).

**C. Analysis**

Cossaboon contends that MMC purposefully established continuous and systematic contacts with New Hampshire sufficient to subject it to general jurisdiction in the state. She does not dispute that MMC is organized under Maine law, has its principal

---

[3] The reasonableness inquiry focuses on an assessment of the so-called "Gestalt factors," which include

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Harlow, 432 F.3d at 67 (quotation marks and citation omitted).

-12-

place of business in Portland, Maine, does not own property or maintain medical facilities in New Hampshire, and does not employ any healthcare professionals who provide medical services in New Hampshire.  However, she points to evidence that MMC (1) advertised to New Hampshire residents, (2) operated a website accessible in New Hampshire, (3) registered to do business in New Hampshire and employed one person to work in New Hampshire, (4) participated in REMIS, a system that facilitates patient transfers, (5) entered into an agreement with Dartmouth Medical School in New Hampshire, and (6) treated a substantial number of New Hampshire residents at its Maine facility.

Our analysis of whether MMC's contacts with New Hampshire are constitutionally sufficient to support the exercise of general jurisdiction ultimately depends upon those contacts viewed in the aggregate.  See, e.g., Noonan, 135 F.3d at 93. However, we cannot determine whether MMC's contacts as a whole support the assertion of general jurisdiction without first exploring each type of contact to assess its quality, frequency, and, of particular importance, the extent to which it is purposefully directed toward New Hampshire residents.  Therefore, we examine separately each of the contacts Cossaboon relies on to support her claim of general jurisdiction.

1. Advertising

Cossaboon argues that MMC has "consistently advertised" its services in New Hampshire and these advertising efforts support the exercise of general jurisdiction. However, "where defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction." Harlow, 432 F.3d at 66 (internal quotation marks and citations omitted). In Harlow, we held that the hospital's advertising activities, which included sending monthly newsletters and other mailings directly to physicians in the forum state, were insufficient to support the exercise of general jurisdiction. Id. at 60, 65-66; see also Sandstrom, 904 F.2d at 89-90 (holding that defendant company's placement of "help wanted" ads in forum-based newspaper was "neither pervasive nor even substantial" advertising, and fell "far short of bridging the jurisdictional gap").

In prior cases, we have found even extensive advertising contacts with the forum state inadequate to permit an assertion of general jurisdiction. In Glater, the defendant, a pharmaceutical company, advertised in trade journals that circulated in the forum state, employed eight sales representatives to market products to potential customers in the state, and sold products to wholesale distributors located in the state. 744 F.2d at 215. We concluded that these advertising and solicitation activities did not meet the

stringent standard for general jurisdiction.  Id. at 217; see also Seymour v. Parke, Davis & Co., 423 F.2d 584, 585 (1st Cir. 1970) (finding no general jurisdiction where defendant drug company advertised in the forum state by mail and employed six sales representatives in forum state to disseminate product information and take orders).

MMC's advertising to New Hampshire residents is less purposeful and less extensive than the advertising contacts found insufficient in prior cases.  MMC does not purchase advertisements in any New Hampshire-based newspapers, telephone directories, or radio or television stations.  Although it issues periodic press releases to forty-five media outlets, only two of those outlets are based in New Hampshire, and no press releases are sent to only New Hampshire-based media.  Moreover, there is no evidence regarding the content or frequency of these press releases.  MMC has placed advertisements in one regional trade publication produced in New Hampshire, but it appears that it merely advertised job openings at MMC.  Finally, MMC advertises on Maine-based radio and television stations, some of which have signals that reach parts of New Hampshire. However, this advertising, although it may incidentally reach some New Hampshire viewers or listeners, is not targeted toward New Hampshire residents in particular.

Cossaboon relies on Soares v. Roberts, 417 F. Supp. 304 (D.R.I. 1976), to argue that advertising activities similar to

-15-

those engaged in by MMC have been found to support an assertion of personal jurisdiction. In Soares, the court held that the defendant, a Boston, Massachusetts medical facility that performed abortions, was subject to personal jurisdiction in Rhode Island. Id. at 307. The court based its conclusion in part on evidence that the facility placed advertisements in local Rhode Island newspapers, received regular referrals from Rhode Island healthcare providers, and employed a staff-person to inform Rhode Island healthcare providers about its services. Id.

Soares does not support a finding of general jurisdiction in this case. The Soares court exercised specific jurisdiction over the defendant, but made it clear that it was hesitant to assert general jurisdiction. Id. at 307-08 (noting that the facility's advertising had "a direct connection with the case at bar" because the plaintiff was "within the class of persons" the advertising was designed to reach, and holding that personal jurisdiction extended "at least as to those individuals whose business the solicitation was designed to obtain"). Furthermore, the advertising to forum state residents in Soares was more extensive and more purposeful than MMC's occasional press releases and help-wanted advertisements that may have been viewed by New Hampshire residents.

2. MMC Website

Cossaboon contends that MMC's "user-friendly and interactive website," www.mmc.org, supports the exercise of general jurisdiction.  It is clear that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005) (addressing analogous issue of extraterritorial jurisdiction under the Lanham Act).  Given the "omnipresence" of internet websites, such a rule would "eviscerate" the limits on personal jurisdiction over out-of-state defendants. Id.  Instead, for website activity to support the exercise of personal jurisdiction, "[s]omething more is necessary, such as interactive features which allow the successful online ordering of the defendant's products."  Id.

In addressing what "more" is required to support the exercise of general jurisdiction based on website activity, courts have focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website. See, e.g., Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 223 (D.N.H. 2000) ("[A] proper analysis of the jurisdictional effects of an internet web site must focus on whether the defendant has actually and deliberately used its website to conduct commercial transactions or other activities

-17-

with residents of the forum."); Coastal Video Commc'ns Corp. v. Staywell Corp., 59 F. Supp. 2d 562, 571-72 (E.D. Va. 1999) (finding the "mere existence of an interactive website" insufficient to support general jurisdiction); 4A Wright & Miller, supra, § 1073.1. We employed such an analysis in Harlow, reasoning that the hospital's website, although accessible in the forum state, did not support a finding of general jurisdiction because the hospital did not "actually do business" through its website. 432 F.3d at 65-66.

Cossaboon emphasizes that MMC's website is not purely informational, but has interactive features. The website permits users to make online donations, complete patient pre-registration, register for classes, find a doctor, and apply for employment.

Although it has these interactive features, MMC's website does not sell or render services online. Instead, the site is primarily informational and discusses the healthcare services provided at MMC's facility in Maine. Moreover, MMC's website is available to anyone with internet access and does not target New Hampshire residents in particular. Although MMC's interactive website advertises MMC's services and may increase the chance that users turn to MMC for their healthcare needs, that is no more true of New Hampshire residents than it is of any other visitors to the website. The mere fact that such an interactive site is accessible in New Hampshire does not indicate that MMC purposefully availed itself of the opportunity to do business in New Hampshire.

-18-

Cossaboon asserts that MMC's website is "designed to reach and appeal to New Hampshire residents specifically." However, she points only to evidence that a keyword search of MMC's site for "New Hampshire" yields four web pages that mention the state.[4] These four stray references to New Hampshire on MMC's website do not indicate that MMC intentionally uses its website to

---

[4] These four entries on MMC's website read, in pertinent part:

> Precious Hearts Support Group. Members of the group are parents of families with children with congenital heart defects from Maine and New Hampshire, including those who have lost their battle with CHD.

> Neuro-Endovascular Therapy - Maine Neurosurgery. The physicians of Maine Neurosurgery provide care to patients in Maine and New Hampshire for conditions including trauma, spine disorders, tumors, cerebrovascular and carotid artery disease, peripheral nerve problems, and epilepsy.

> Respiratory Care. The Pulmonary Hypertension Program at Maine Medical Center serves patients throughout Northern New England, with current patients from Maine, New Hampshire, Vermont, New York, and Massachusetts.

> Helping Children in our Community. All fundraising efforts by the Barbara Bush Children's Hospital at Maine Medical Center and its Children's Miracle Network in Southern and Central Maine and Northern New Hampshire benefit The Barbara Bush Children's Hospital at Maine Medical Center, reflecting the founding pledge to keep 100% of the donations in the local community. Funds raised in our area help give all children in Maine and New Hampshire access to quality medical care close at home.

-19-

target New Hampshire residents.  Indeed, the homepage of MMC's website does not mention New Hampshire at all but instead focuses on MMC's services to the Portland area and the state of Maine, stating that MMC "fills a dual role: it is Maine's premier referral hospital, offering services not available elsewhere in the state, and it is a community hospital serving the greater Portland region."  MMC's website, although available to New Hampshire residents, is not purposefully directed toward them.[5]

---

[5] We note that Cossaboon relies on the often cited <u>Zippo Mfg. Co.</u> v. <u>Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997), a case that addressed whether website activity supported a claim of <u>specific</u> jurisdiction.  <u>Id.</u> at 1122.  In <u>Zippo</u>, the district court held that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  <u>Id.</u> at 1124.  The court then articulated a "sliding scale" to measure a website's contacts with a forum state:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web

-20-

3. Poison Control Center

Cossaboon emphasizes that at the time of E.C.'s alleged injury, MMC was registered to do business in New Hampshire and employed one person in New Hampshire to do work related to the Poison Control Center. Corporate registration in New Hampshire adds some weight to the jurisdictional analysis, but it is not alone sufficient to confer general jurisdiction. See Sandstrom, 904 F.2d at 89 (finding no general jurisdiction where, inter alia, company was registered to do business in forum and conducted limited advertising in forum). "[P]reparations to do business at an indeterminate future date, without more, cannot be confused with actually doing business" in the forum state. Id. We do not find

---

site.

Id. (internal citations omitted). While some courts have applied the Zippo sliding scale to claims of general jurisdiction, see 4A Wright & Miller, supra, § 1073.1 & n.22 (citing cases), it has been noted that the Zippo sliding scale "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002); see 4A Wright & Miller, supra, § 1073.1 ("Note that in theory the Zippo case's sliding scale approach should be of little value in a general jurisdiction analysis. What a defendant does on many — but not necessarily all — 'active' and 'interactive' websites will not rise to the level of the systematic and continuous contacts that are required for the exercise of general jurisdiction. . . ."). In this case, MMC's website is best categorized as falling into the intermediate category described by Zippo, and therefore the Zippo scale provides little assistance here. Moreover, given the considerably more stringent standard for establishing general jurisdiction, we find most helpful those decisions addressing whether website activity supports an exercise of general, rather than specific, jurisdiction.

it significant that MMC stated on its application for business registration that its principal business purpose was "including but not limited to poison control serv[ic]es." There is no evidence that MMC conducted any services in New Hampshire apart from those described above related to the Poison Control Center. At most, MMC's broad statement of its business purposes on its registration application suggests preparations to do additional business in New Hampshire at some point in the future.

Here, MMC's lone Poison Control Center employee in New Hampshire did not provide any medical services, poison-related or otherwise, in New Hampshire. Calls to the Poison Control Center are handled by MMC staff in Maine, and all of MMC's poison-related medical services are provided in Maine. Instead, MMC's one New Hampshire-based employee simply provided information and consultation services to healthcare providers and others interested in the Poison Control Center's work. MMC's employment of one person to educate New Hampshire residents about the availability of MMC's poison-related services is akin to a company's employment of individuals to advertise company products to forum residents. We have held that far more extensive advertising and marketing activities in the forum state fell short of establishing general jurisdiction. See Glater, 744 F.2d at 215 (employment of eight salesmen to market products in forum state); Seymour, 423 F.2d at 585 (employment of six salesmen in forum state). Furthermore,

while in cases like Glater and Seymour the products advertised are then sold for use in the forum state, here MMC's advertised services are available only in Maine.

4. REMIS

Cossaboon points to MMC's participation in REMIS to support her claim of general jurisdiction. REMIS is a twenty-four-hour communication center that facilitates transfers to MMC once other hospitals and caregivers have contacted MMC with a transfer request. For example, when a caregiver calls MMC to request a transfer, REMIS facilitates determination of the appropriate services to contact and then monitors the call to collect transfer information. Transfer requests are initiated by the patient's own caregiver, not by MMC, and patients still must travel to Maine to receive MMC's medical services. MMC has no agreement with New Hampshire physicians whereby patients are directed to MMC for medical services, and there is no indication that MMC participates in REMIS in order to attract more referrals from New Hampshire in particular. MMC's participation in REMIS does not reflect any act by which MMC purposefully directs its activities toward New Hampshire residents.

Cossaboon relies on Kenerson v. Stevenson, 604 F. Supp. 792 (D. Me. 1985), to argue that MMC's participation in REMIS supports a finding of general jurisdiction. In Kenerson, the district court held that a New Hampshire hospital was subject to

-23-

general jurisdiction in Maine.  Id. at 795.  The court based its exercise of jurisdiction on the hospital's treatment of Maine patients (approximately 8% of total patient admissions), receipt of reimbursement from the Maine Department of Human Services, and participation in REMIS, a system that "contemplates emergency transfer of patients."  Id.  The district court's opinion in Kenerson, although not expressly overruled by Harlow, is clearly in tension with that decision.  See Harlow, 432 F.3d at 65 n.9 (neither approving of or distinguishing Kenerson, but instead stating that "[w]hether Kenerson is correct or not, the evidence here does not establish general jurisdiction").  In light of our subsequent holding in Harlow, we find Kenerson unpersuasive here.[6]

5. Treatment of New Hampshire Patients

Finally, Cossaboon relies on evidence that MMC treats a substantial number of patients from New Hampshire and derives revenue from its treatment of those residents.  However, MMC treats New Hampshire residents only in Maine; it provides no medical services in New Hampshire.  As we explained in Harlow, "[t]reating

_____

[6] Similarly, MMC's agreement with Dartmouth Medical School in New Hampshire does not support the exercise of general jurisdiction.  The agreement allows Dartmouth medical students to be placed at MMC for seven to eight week clinical education rotations, and specifies that visiting Dartmouth students are not "employees" of MMC.  Dartmouth students must travel to Maine to take advantage of this educational opportunity at MMC.  MMC's willingness to accept Dartmouth students for clinical rotations at its Maine facility does not indicate that MMC purposefully availed itself of the privilege of conducting business activities in New Hampshire.

-24-

patients from Maine in Massachusetts, even on a regular basis, is not the same as engaging in continuous and systematic activity in Maine.  A hospital that treats Maine residents in Massachusetts is, quite simply, in a different position from a hospital that treats Maine residents in Maine." Harlow, 432 F.3d at 66.  Our conclusion in Harlow was not altered by the fact that the Massachusetts hospital derived revenue from treating Maine patients, a portion of which came from Maine Medicaid.  Id. at 66 (citing Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 906 (4th Cir. 1984), which held that defendant hospital was not subject to general jurisdiction even though hospital derived approximately one-fifth of its income from forum-state residents).

In this case, New Hampshire residents represent only 1.23% of all patients treated at MMC and 2.9% of all in-patient admissions to MMC.  Similarly, payments for treatment of New Hampshire residents, whether from New Hampshire Medicaid or private insurers, account for just 3.24% of MMC's total revenue.  MMC's treatment of some patients from the bordering state of New Hampshire does not indicate that MMC purposefully attracted New Hampshire patients or otherwise directed its services toward New Hampshire residents.  We cannot subject MMC to general jurisdiction based on the "unilateral activity" of New Hampshire patients who choose to travel to Maine for medical treatment at MMC.  Burger King, 471 U.S. at 475.

-25-

## D. Conclusion

In <u>Harlow</u>, a case with closely analogous facts, we held that the defendant, a Massachusetts hospital, was not subject to general jurisdiction in the District of Maine. 432 F.3d at 65-66. The hospital was organized under Massachusetts law, had its principal place of business in Boston, did not own real estate or maintain branch offices in Maine, and did not provide medical services in Maine. However, the hospital treated some Maine residents (approximately .55% of annual patient admissions), received payments from Maine Medicaid, sent periodic newsletters and other mailings directly to Maine physicians, and operated a website accessible to Maine residents. <u>Id.</u> We concluded that these activities fell "well below the levels of contacts that have previously been found insufficient to support general jurisdiction." <u>Id.</u> at 66 (internal quotation marks and brackets omitted).

Here, too, viewing the contacts relied on by Cossaboon in the aggregate, as we must, we conclude that MMC has not deliberately established continuous and systematic contacts with New Hampshire such that it should reasonably anticipate being subject to suit in New Hampshire courts. Although Cossaboon points to various contacts between MMC and New Hampshire, these contacts do not meet the stringent standard for the exercise of general jurisdiction. MMC is located in Maine, organized and licensed in

Maine, and provides medical services to patients exclusively in Maine. The hospital engages in some advertising of its services, maintains an interactive website, had one New Hampshire-based employee for a time, participates in the REMIS referral system, and treats some New Hampshire residents. However, none of MMC's advertising, website or referral activities target New Hampshire residents in particular. In addition, although MMC may attract nonresidents for medical care or clinical education, its services are available only in Maine. Viewed as a whole, MMC's contacts with New Hampshire do not amount to the purposeful, continuous and systematic pursuit of general business activities in New Hampshire. On this record, New Hampshire cannot constitutionally exercise general jurisdiction over MMC.[7]

## III.

For the reasons set forth above, the district court's order granting MMC's motion to dismiss for lack of personal jurisdiction is <u>affirmed.</u>

So ordered.

---

[7] In light of our conclusion that MMC lacks constitutionally sufficient contacts with the forum state, we do not reach the question of whether the exercise of general jurisdiction would be reasonable under the circumstances. <u>Sandstrom</u>, 904 F.2d at 89.