**MEDIA3 TECHNOLOGIES, LLC, Plaintiff,**

v.

**CABLESOUTH MEDIA III, LLC, Defendant.**

Civil No. 13–12558–FDS.

United States District Court, D. Massachusetts.

Signed March 12, 2014.

*MEMORANDUM AND ORDER ON DE-FENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANS-FER*

SAYLOR, District Judge.

This is a claim for trademark infringement. Plaintiff Media3 Technologies, LLC, has brought suit against defendant CableSouth Media III, LLC, contending that CableSouth has caused customer confusion and harm to Media3's reputation by using its "media3" trademark without permission. The complaint asserts claims under the Lanham Act, 15 U.S.C. § 1114; under the Massachusetts State Trademark Act, Mass. Gen. Laws ch. 110H, § 13; and for violation of common-law trademark rights.

CableSouth has moved to dismiss the complaint for lack of jurisdiction under Fed.R.Civ.P. 12(b)(2) and improper venue under Fed.R.Civ.P. 12(b)(3), or, in the alternative, to transfer the case to the Western District of Tennessee under 28 U.S.C. § 1404(a).

For the following reasons, the motion to dismiss will be granted.

## I. Background

### A. Factual Background

The facts set forth below are uncontested or affirmatively alleged by plaintiff.[1]

Media3 Technologies, LLC, is a Massachusetts limited liability company based in Pembroke, Massachusetts. (Hayes Aff., Docket No. 12, Ex. 1, ¶ 3). It provides a wide array of Internet-based services, including website hosting, web-based appli-

Richard C. Van Nostrand, Mirick, O'Connell, DeMallie, & Lougee, LLP, for Plaintiff.

Robert R. Pierce, Pierce & Mandell, P.C., Boston, MA, for Defendant.

---

1. On a motion to dismiss for lack of personal jurisdiction, the court should accept the plaintiff's properly documented evidentiary proffers as true, whether or not disputed, and construe them in the light most favorable to the plaintiff. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir.2002). Uncontested facts proffered by the defendant may also be considered. *Id.*

cation hosting, e-mail services, and the provision of computer servers. (*Id.* ¶ 4). Media3 has used the "media3" trademark since June 1995. (*Id.* ¶ 5). It registered the trademark with the United States Patent and Trademark Office on August 20, 2013. (Reg. No. 4,388,015, Docket No. 1, Ex. A).

CableSouth Media III, LLC, is a Tennessee limited liability company based in Milan, Tennessee. (Pate Aff., Docket No. 8, Ex. 1, ¶ 3). It provides cable television, Internet, and telephone services to residential and business customers. (*Id.* ¶ 4). CableSouth provides and markets its services in only three states: Louisiana, Arkansas, and Mississippi. (*Id.* ¶ 6).

At some point before 2011, Media3 began receiving telephone calls and other communications from customers of another company using the "media3" trademark. (Hayes Aff. ¶ 6). It determined that CableSouth was using the trademark on its website, www.mymedia3.com, which (like virtually any other website) is available in Massachusetts to persons with Internet access. (*Id.* ¶ 7).

In general, the individuals contacting Media3 were either seeking to employ CableSouth's services or seeking to lodge a complaint against the company. (*Id.* ¶ 8). In particular, Media3 contends that it was "barraged with calls from CableSouth's customers whenever it ha[d] an outage on its system." (*Id.* ¶ 9). As a result, Media3 switched to an outside receptionist service to screen the calls and avoid disruption of its business. (*Id.* ¶ 10).

In 2011, Media3 contacted CableSouth several times to resolve the issues surrounding its use of the "media3" trademark. (*Id.* ¶¶ 12–13). Those communications continued through 2012 and 2013. (*Id.* ¶ 12, 15). According to plaintiff, during those conversations, representatives of CableSouth indicated to Media3 that they were aware of Media3's existence, and were aware that Media3 was based in Massachusetts, when the company chose to use the "media3" trademark. (*Id.* ¶ 12, 14). Media3 contends that CableSouth did nothing to solve the issues and continued to infringe on the trademark. (*Id.* ¶¶ 14–16).

Media3 continued to receive communications from customers of CableSouth throughout 2012 and 2013. (*Id.* ¶ 17). In addition, one customer of Media3 has mistakenly called CableSouth for technical support. (*Id.* ¶ 18).

In 2013, CableSouth expanded its services, offering "cloud storage services" to business customers. (*Id.* ¶ 22). That expansion put it in the same type of market as Media3. (*Id.*).

CableSouth has never offered any services or served any customers in Massachusetts. (Pate Aff. ¶ 7). It has never advertised, solicited customers, or applied for a license to provide services in Massachusetts. (*Id.* ¶¶ 8–9). CableSouth has no property or employees in Massachusetts. (*Id.* ¶¶ 10–22).

### B. *Procedural Background*

On October 15, 2013, Media3 filed the complaint in this case. The complaint alleges three counts: (1) violation of the Lanham Act, 15 U.S.C. § 1114; (2) violation of the Massachusetts State Trademark Act, Mass. Gen. Laws ch. 110H, § 13; and (3) violation of its common-law trademark rights.

CableSouth has moved to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2) and improper venue under Fed.R.Civ.P. 12(b)(3), or, in the alternative, to transfer the case to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a).

## II. Standard of Review

The exercise of personal jurisdiction over a defendant must be authorized by statute and be consistent with the due process requirements of the United States Constitution. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir.1996); *Intech, Inc. v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125, 826 N.E.2d 194 (2005). Furthermore,

[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction. Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss American Bank*, 274 F.3d 610, 618 (1st Cir.2001) (internal quotations and citations omitted).

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Daynard*, 290 F.3d at 50. A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden: the *"prima facie"* standard, the "preponderance-of-the-evidence," standard, or the "likelihood" standard. *Id.* at 50–51, 51 n. 5; *Foster–Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir.1995).

When a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination. *Swiss American*, 274 F.3d at 618. In conducting a *prima facie* analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed), construing them in the light most favorable to the plaintiff; the court, however, should not credit "conclusory allegations or draw farfetched inferences." *Ticketmaster–New York v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994). The court can "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Daynard*, 290 F.3d at 51. Although the court will construe the facts in the light most favorable to the plaintiff in a motion to dismiss, the plaintiff still has the burden of demonstrating each jurisdictional requirement. *See Swiss American*, 274 F.3d at 618.

## III. Analysis

Defendant contends this case should be dismissed for lack of personal jurisdiction. To establish personal jurisdiction, plaintiff "must demonstrate that the Massachusetts long-arm statute grants jurisdiction over [defendant] and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment." *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir.2007).

As plaintiff points out, "[i]n Massachusetts, the Court can 'sidestep the statutory inquiry and proceed directly to the constitutional analysis' because the state's long-arm statute is coextensive with the limits allowed by the Constitution." *Adelson*, 510 F.3d at 49 (quoting *Daynard*, 290 F.3d at 52); *see also "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 N.E.2d 423 (1972). Under that analysis, personal jurisdiction over defendant is lacking.

Due process requires that a defendant over whom a Massachusetts court will exercise jurisdiction has maintained "minimum contacts" with the state "such that

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). For specific jurisdiction, the First Circuit has broken the minimum contacts analysis into three categories: relatedness, purposeful availment, and reasonableness. *Adelson,* 510 F.3d at 49.[2] Plaintiff contends the Court has specific personal jurisdiction over defendant because (1) it maintains a website, accessible in Massachusetts, that uses the "media3" trademark without permission, and (2) it failed to take steps to eliminate the confusion in the marketplace that is causing harm to plaintiff in Massachusetts due to its infringing use of the trademark.

### A. Relatedness

 To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Daynard,* 290 F.3d at 60 (quoting *Foster–Miller,* 46 F.3d at 144). Plaintiff has affirmatively alleged that defendant infringed on its trademark by publishing a website available in Massachusetts and that it suffered harm in Massachusetts as a result. "Where, as here, the alleged trademark infringement arose out of the publication of a website in Massachusetts and allegedly caused harm to plaintiff in Massachusetts, the relatedness element is easily satisfied." *Edvisors Network, Inc. v. Educational Advisors, Inc.,* 755 F.Supp.2d 272, 281 (D.Mass.2010); *see also Gather, Inc. v. Gatheroo, LLC,* 443 F.Supp.2d 108, 115 (D.Mass.2006); *Northern Light Tech., Inc. v. Northern Lights Club,* 97 F.Supp.2d 96, 106 (D.Mass.2000); *Hasbro,*

*Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 44 (D.Mass.1997).

### B. Purposeful Availment

 A defendant's in-state contacts "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Daynard,* 290 F.3d at 61 (quoting *Foster–Miller,* 46 F.3d at 144). "The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability." *Id.* (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1391 (1st Cir.1995)). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions of the defendant *himself.*'" *Adams v. Adams,* 601 F.3d 1, 6 (1st Cir.2010) (quoting *Phillips Exeter Academy v. Howard Phillips Fund,* 196 F.3d 284, 292 (1st Cir.1999)) (emphasis in original). "The contacts must be deliberate, and 'not based on the unilateral actions of another party.'" *Id.* (quoting *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22, 28 (1st Cir.2008)).

In cases involving interactions through a website that is operated from outside the forum state but that residents in that state can access, the focus of the analysis has been on the "purposeful availment" requirement. *See, e.g., Cossaboon v. Maine Med. Ctr.,* 600 F.3d 25, 35–36 (1st Cir. 2010); *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.,* 2010 WL 3895177, *13–20 (D.Mass. Oct. 1, 2010); *BroadVoice, Inc. v. TP Innovations LLC,* 733 F.Supp.2d 219, 224–27 (D.Mass.2010); *Back Bay Farm, LLC v. Collucio,* 230 F.Supp.2d 176, 185 n. 10 (D.Mass.2002).

---

2. Plaintiff does not contend that defendant is subject to general personal jurisdiction in this Court. (Pl. Opp. at 5 n. 2).

This Court shares the concern articulated in most of these cases that without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would eviscerate the limits on personal jurisdiction over out-of-state defendants. *Cossaboon,* 600 F.3d at 35.

In *Cossaboon,* the First Circuit addressed the question of whether an interactive website, located outside the forum state and directed at residents of every state, may on its own fulfill the requirement of purposeful availment. *Id.* at 35–36. The court held that something "more" is required to support the exercise of personal jurisdiction based on website activity, and "focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." *Id.* at 35. In finding that it lacked personal jurisdiction over the defendant, the court found it instructive that the defendant's website was available to anyone with Internet access, did not target forum state residents in particular, and any advertising on it was no more likely to solicit business in the forum state than anywhere else. *Id.* at 35. The court also emphasized that although the website was interactive—"permit[ing] users to make online donations, complete patient pre-registration, register for classes, find a doctor, and apply for employment"—it primarily discussed the services provided at the defendant's facility in Maine. *Id.*

Here, the website describing defendant's services is also available to anyone with Internet access, does not target Massachusetts residents in general, and contains generic advertising that is no more likely to solicit customers in Massachusetts than anywhere else. Although the website offers different commercial services than that of the defendants in *Cossaboon,* it is

designed and intended to target customers and facilitate defendant's services in Louisiana, Arkansas, and Mississippi. Moreover, defendant does not offer any services in Massachusetts, owns no property in Massachusetts, has no employees in Massachusetts, and is otherwise unrelated to the forum. Something more is required to show defendant purposefully availed itself of doing business in Massachusetts. *See Northern Light Tech.,* 97 F.Supp.2d at 106 (noting that "[t]he mere existence of a web site is not sufficient to show purposeful availment" and that "some expression to do business in the pertinent state must exist"); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir.2003) ("[T]he mere operation of a commercially active web site should not subject the operator to jurisdiction anywhere in the world. Rather there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by (1) directly targeting its web site to the state, (2) knowingly interacting with residents of the forum state via its web site, or (3) through sufficient other related contacts.").

Citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), plaintiff contends that where a defendant knows that the brunt of the injury from its trademark infringement will be felt in a particular jurisdiction, "the defendant must reasonably anticipate being haled into court there." (Pl. Opp. at 7) (internal quotations omitted). *Calder* is inapposite for two reasons. First, *Calder* was a defamation case, and the Supreme Court has not yet extended its reasoning to trademark-infringement cases. *See Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.,* 946 F.Supp.2d 182, 191 (D.Mass.2012). Second, *Calder* requires not only that the effects be felt in the forum state, but also that the defendant's *intentional* conduct be calculated to cause injury there. *Cald-*

*er*, 465 U.S. at 791, 104 S.Ct. 1482. In *Calder*, the defendants' "intentional, and allegedly tortious, actions were *expressly aimed* at" the forum state. *Id.* at 789, 104 S.Ct. 1482 (emphasis added). Here, plaintiff has not affirmatively alleged that defendant intentionally infringed on the "media3" trademark in order to cause injury in Massachusetts.

Plaintiff further contends that defendant's "continuation of its infringing course of conduct without regard to the injurious effect it has had on [plaintiff] here in Massachusetts, even when on notice of such injury, clearly constitutes that 'something more'" required by *Cossaboon*. (Pl. Opp. at 8). As plaintiff recognizes, however, defendant's contacts with Massachusetts must be voluntary and foreseeable to satisfy the purposeful availment requirement. *Sawtelle*, 70 F.3d at 1391. In this case, defendant's actions in using the "media3" trademark were voluntary, but its own interactions with Massachusetts were not. And although plaintiff has alleged that one of its customers viewed defendant's website and confused the two companies, unilateral action by a third party does not show that defendant voluntarily reached into Massachusetts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ("[U]nilateral activity of a ... third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum [s]tate to justify an assertion of jurisdiction."). Likewise, the communications unilaterally sent into Massachusetts by defendant's disgruntled customers do not show that defendant voluntarily reached into Massachusetts. *See Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("The unilater-

al activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). These actions by other parties cannot constitute the "something more" required by *Cossaboon*.

In short, the exercise of personal jurisdiction over defendant under the circumstances presented here would not be consistent with the requirements of due process. Accordingly, defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(2) will be granted.[3]

### IV. *Conclusion*

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

---

3. The Court does not decide whether exercise of personal jurisdiction would be reasonable or whether Massachusetts is a proper venue for this case.